UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUATRAIL SMITH,

    Plaintiff,

                                     Case No. 23-cv-11490

v.                                    Hon. Matthew F. Leitman

VOURHEES, *et al.*,

    Defendant.

_____/

### ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION (ECF No. 52); (2) ADOPTING THE RECOMMENDED DISPOSITION IN THE REPORT & RECOMMENDATION (ECF No. 49); (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 43); AND (4) DISMISSING JOHN DOE DEFENDANTS

In this action, Plaintiff Quatrail Smith alleges that while he was incarcerated in the Genesee County Jail in May of 2022, jail staff members assaulted him and then failed to protect him from a later assault by another inmate. He brought his claims against four jail employees: Deputy Isiah Vorhies[1] and three deputies whose names he did not know. He identified those employees as John Does in his Complaint and Amended Complaint. To this date (and even though discovery closed more than 10 months ago), Smith has still not identified the John Does.

_____

[1] Smith appears to have misspelled Vorhies' name in his Amended Complaint. The Court spells Vorhies' name as it is spelled in the declaration that Vorhies attached to his motion for summary judgment. (*See* Vorhies Decl., ECF No. 43-4.)

Now before the Court is Vorhies' motion for summary judgment (*See* Mot., ECF No. 43.)  On February 4, 2026, the assigned Magistrate Judge issued a report and recommendation in which he recommended that the Court grant Vorhies' motion (the "R&R"). (*See* R&R, ECF No. 49.)   The Magistrate Judge also recommended that the Court dismiss the claims against the John Does because they remain unidentified. (*See id.*)

Smith thereafter filed objections to the R&R. (*See* Objs., ECF No. 52.)  For the reasons explained below, the Court **OVERRULES** Smith's objections, **ADOPTS** the recommended disposition of the R&R, **GRANTS** Vorhies' motion for summary judgment, and **DISMISSES** the claims against the John Does.

## I

## A

Smith alleges that the Defendants violated his rights during two separate encounters on May 29, 2022.  First, he claims that the John Does entered his cell, assaulted him, tightened his handcuffs so tight as to cause injury, and then placed him in a restraint chair in another area of the jail and tightly bound the straps of the chair. (*See* Am. Compl., ECF No. 23, PageID.95.)

Second, he claims that Vorhies failed to protect him from an assault by another inmate after the John Does placed him in the restraint chair.  More specifically, Smith says that Vorhies unlocked and then opened the door to the room in which he

(Smith) sat restrained and thereby made it possible for a known enemy of Smith to

enter the room and attack Smith as Smith sat unable to defend himself. (*See id.*)  The

Magistrate Judge aptly described Smith's allegations against Vorhies as follows:

> With respect to Defendant Vourhees, Plaintiff alleges that "Deputy Vourhees[,] who controlled the doors[,] was aware of me being there in the restraint chair [and] used his key to unlock the door[,] allowing prisoners who wanted revenge for my alleged involvement in the murder for which [I'm] currently serving time . . . ." (ECF No. 23, PageID.95.) Plaintiff further alleges Deputy Vourhees . . . fail[ed] to protect me from an assault by other prisoners even [though] it was soo [sic] obvious to a lamens [sic] eye that I could not protect myself while bound by hands and feet to a chair with no possible way to run." (*Id.*) Plaintiff also attaches to his proposed amended complaint an "Affidavit of Truth," in which he sets forth additional factual allegations, including:
>
>> Deputy Vourhees had controll [sic] of the door to let prisoners in the area where I was being held bound hand and feet to a restraint chair, he was fully aware I was there, and was fully aware of my high profile murder case because we had talked about it in the past. Deputy Vourhees opened the door by placing his keys in the door allowing prisoners to assault me . . . failing to protect me . . . 8th Amendment violation to the United States Constitution.
>
> (ECF No. 23, PageID.97.)

(R&R, ECF No. 49, PageID.319-321 (footnotes omitted).)

The parties conducted discovery on Smith's claims.  Discovery closed on May 16, 2025.  Smith still has not identified the John Does. [2]

**B**

**1**

On May 20, 2025, Vorhies filed his now-pending motion for summary judgment. (*See* Mot., ECF No. 43.)  In support of that motion, Vorhies attached his own declaration, excerpts from Smith's deposition, a declaration from expert witness Tim McGuckin, and critically, three videos that show the incident that occurred while Smith was seated in the restraint chair from different angles. (*See id.*)

In the motion and in his declaration, Vorhies explains that he opened the door to the room in which Smith was seated in order to allow another inmate to pass through the room to use toilet facilities. (*See id.*, PageID.240.)  Vorhies says that when he opened the door, a third inmate "rushed in and assaulted [Smith]," that he (Vorhies) "had no prior notice that the [third inmate] had a motive for the attack or that the attack was planned," and that he (Vorhies) "attempted to stop the [third inmate] by holding his arm out to block the [third inmate], but the [third inmate] bit Deputy Vorhies' arm and broke through, assaulting [Smith]." (*Id.*, PageID.240-241.)

---

[2] Ten months after the close of discovery, Smith filed a motion to compel the identification of the John Does. (*See* Mot. to Compel, ECF 53.)  The Magistrate Judge denied that motion for several reasons, including that it was filed long after the close of discovery. (*See* Text Order dated 2/27/26.)  Smith has not filed any objection to that order.

Finally, Vorhies notes that he "immediately sprayed the attacking inmate with [pepper] spray," thereby stopping the assault. (*Id.*, PageID.240.)  Vorhies argues in the motion that the evidence conclusively shows he "acted reasonably to prevent [Smith's] assault" and that he is therefore entitled to qualified immunity. (*Id.*, PageID.249.)

Smith filed a response in opposition to Vorhies' motion for summary judgment. (*See* Resp., ECF No. 45.)  Smith argued that Vorhies was not entitled to qualified immunity and that there were still disputed facts in the case, such as whether Vorhies had been bitten by the attacker and whether Vorhies was aware that the attacker wanted to assault Smith. (*See id.*, PageID.291-294.)  Smith did not attach to his response any additional evidence for the Court to consider. (*See generally id.*)

**2**

On February 4, 2026, the assigned Magistrate Judge issued the R&R. (*See* R&R, ECF No. 49.)  In the R&R, the Magistrate Judge recommended that the Court grant Vorhies' motion on the grounds that Vorhies is entitled to qualified immunity against Smith's failure-to-protect claim. (*See id.*)

Before turning to the merits of Smith's claim, the Magistrate Judge clarified that the claim arose under the Eighth Amendment, not under the Due Process Clause, because the assault occurred after Smith had been sentenced for a crime. (*See id.*, PageID.323-327.)

5

The Magistrate Judge then explained that Smith's claim failed as a matter of law for the following reasons:

> The evidence submitted by Defendant conclusively shows that he is entitled to qualified immunity on Plaintiff's claim. Defendant's declaration states he was not aware of any animosity between any inmates and Plaintiff. But, more importantly, he explains the reason he opened the door, his attempt to protect Plaintiff (while being bitten), and his quick restraint of the attacker. Moreover, Defendant's declaration is confirmed by the video evidence. Vorhies is clearly seen attending to the inmate in need of the restroom—indeed escorting him through the anteroom (i.e., he did not allow an inmate into the room with Plaintiff unaccompanied). The attacking inmate was nowhere in the vicinity of the anteroom when Vorhies went to open the door, and can be seen surreptitiously making his way toward the door until the final moment when he bursts through, clearly taking Vorhies by surprise. Vorhies is also seen attempting to block the attacker, and then is seen using his pepper spray on him within three seconds of the initial attack.
>
> Under these facts, which are not disputed by admissible evidence, Plaintiff cannot avoid qualified immunity because he cannot meet the first prong of the *Saucier* test, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.

(*Id.*, PageID.331-332.)

In addition to recommending that the Court grant Vorhies' motion for summary judgment, the Magistrate Judge also recommended that the Court dismiss the claims against the John Does because the case was "now past the close of discovery and [Smith] has failed to identify the John Does." (*Id.*, PageID.337.)  The

Magistrate Judge said that the dismissal of the John Does would result in the dismissal of the entire case because they were the only Defendants named in the Amended Complaint other than Vorhies. (*See id.*)

The Magistrate Judge concluded by notifying the parties that they had 14 days to file objections to the R&R. (*See id.*, PageID.338.)   He instructed them that "objections must be labeled as 'Objection No. 1, and 'Objection No. 2,' etc." and that "[a]ny objection must recite precisely the provision of this Report and Recommendation to which it pertains." (*Id.*)

On February 25, 2026, Smith filed what he called his "Objection[s] to Recommendation to Grant Defendant['s] Motion for Summary Judgment." (*See* Objs., ECF No. 52.)  The Court will discuss Smith's objections in detail below.  For the reasons the Court will explain, the Court **OVERRULES** Smith's objections, **ADOPTS** the recommended disposition of the R&R, and **GRANTS** Vorhies' motion for summary judgment.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

7

## III

### A

Smith's objections are deficient as a matter of law because they do not address the reasoning of the Magistrate Judge as set forth in the R&R.  Indeed, Smith does not even cite to the R&R in any of his five objections.  Moreover, four of his objections raise new claims that are not in his Amended Complaint and that were not considered or addressed in the R&R. (*See* Objs., ECF No. 52, PageID.348-351.) Under these circumstances, Smith's five "objections" are tantamount to no objections at all. *See Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482 (6th Cir. 2001) (holding that plaintiff had "waived any challenge to the district court's conclusions" because his objections to report and recommendation did not "specifically address how [the Magistrate Judge's] factual and legal recommendations were incorrect" and did not address the Magistrate Judge's reasoning); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (explaining that an "objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed").  Because Smith has not filed any cognizable objections to the R&R, he has waived his right to review. *See Thomas*, 474 U.S. at 149; *Ivey v. Wilson*, 832 F.2d 950, 957 (6th Cir. 1987) (explaining that where party failed to file "timely objections" to report and recommendation, court properly accepted that recommendation "[w]ithout

expressing any view on the merits of the magistrate's conclusions"). On that basis alone, the Court **OVERRULES** his objections.

**B**

Even though Smith's objections fail for the reason explained above, the Court will nonetheless address his first objection – the only objection that relates to his failure-to-protect claim against Vorhies. In this objection, Smith says that Vorhies "should have known or been made aware" that he (Vorhies) needed to keep Smith separated from the inmate who attacked him. (Objs., ECF No. 52, PageID.346-347.) Smith adds that Vorhies "should have never opened the door allowing other inmates access to [Smith] who [was] strap[ped] to a chair defenseless, especially [the inmate who did assault Smith]." (*Id.*) Smith argues that overall, "Deputy Vorhies' action[s] were not reasonable." (*Id.*, PageID.346.)

But even if, as Smith insists, Vorhies' actions were not "reasonable" for the reasons advanced by Smith, Smith's claim would still fail. That is because "'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim." *Pagels v. Morrison*, 335 F.3d 736, 742 (8th Cir. 2003). Instead, in order to prevail on his failure-to-protect claim, Smith must show that Vorhies acted with "deliberate indifference" – a higher standard. "An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th

9

Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (6th Cir. 1994)).  This is "the equivalent of recklessly disregarding that risk." *Rhodes v. Michigan*, 10 F.4th 665, 675 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 836).

The Magistrate Judge correctly concluded that Smith failed to make that showing here.  The video recordings conclusively show that Vorhies was not deliberately indifferent to the risk of harm to Smith.  Those videos show that as Vorhies was unlocking the door to the room in which Smith sat, another inmate surreptitiously made his way to the door from the far side of the housing unit and rushed through the door behind Vorhies. (*See* Video Exhibit B2, received at Text Docket Entry dated 5/20/2025, at 0:10-0:34; Video Exhibit B3, received at Text Docket Entry dated 5/20/2025 at 0:03-0:08. [3])  There is no evidence that Vorhies knew about, suspected, or was recklessly indifferent to the risk that the attacking inmate would stage a surprise attack by sneaking up to and rushing through the door as Vorhies unlocked it.  Even if Vorhies may have understood that the other inmate posed some general threat to Smith, there is simply no proof that Vorhies was

---

[3] The Court found it helpful to watch Video Exhibit B3 first followed by Video Exhibit B2. Video Exhibit B3 shows the incident from inside the room where Smith was restrained.  The video shows the attacker bursting through the door behind Vorhies, who immediately grapples with the attacker and subdues him with pepper spray, all within the first fifteen seconds of the video.  Video Exhibit B2 has a view of the housing unit's common area (adjacent to the room in which Smith was seated). That video shows how the attacker weaved his way from the far side of the common area through dozens of other inmates to sneak up behind Vorhies and burst through the door that Vorhies opened.

recklessly indifferent to Smith's safety when Vorhies failed to anticipate and prevent the attacking inmate's well-executed surprise attack launched at the moment Vorhies unlocked the door.

The videos further show that as soon as Vorhies understood that the attacker was attempting to enter through the unlocked door, Vorhies attempted to block the attacker and that Vorhies forced the attacker to the floor within seconds of the attacker entering the room. (*See* Video Exhibit B3, received at Text Docket Entry dated 5/20/2025, at 0:06-0:19.)  The Magistrate Judge accurately summarized the events as follows:

> The undisputed facts, as most clearly elucidated in the video evidence, show that Vorhies was overpowered in a surprise attack while escorting an inmate through the anteroom to a bathroom. The undisputed facts show that Vorhies then immediately acted to subdue and restrain the attacker.

(R&R, ECF No. 49, PageID.335-336.)  To the extent that Smith advances any other version of the facts, that alternative version is flatly contradicted by the videos of the assault and is therefore insufficient to defeat Vorhies' motion. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

11

In sum, Vorhies acted (at worst) negligently when, in the presence of other inmates, he opened the door to the room in which Smith was restrained, but, as noted above, "deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 835. The Magistrate Judge thus correctly ruled that Vorhies is entitled to summary judgment.

## IV

For the reasons explained above, the Court **OVERRULES** Smith's objections to the R&R (ECF No. 52), **ADOPTS** the recommended disposition of the R&R (ECF No. 49), **GRANTS** Vorhies' motion for summary judgment (ECF No. 43), and **DISMISSES** the claims against the John Does. Since these rulings dispose of all claims against all Defendants, the entire action is **DISMISSED**.

   **IT IS SO ORDERED.**

                                   s/Matthew F. Leitman
                                   MATTHEW F. LEITMAN
                                   UNITED STATES DISTRICT JUDGE
Dated:  March 20, 2026

   I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 20, 2026, by electronic means and/or ordinary mail.

                                   s/Holly A. Ryan
                                   Case Manager
                                   (313) 234-5126

12